UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SABER PETROLEUM LTD., : | |
| : | |
| Plaintiff, : | 3:00 CV. 325 (AVC) |
| : | |
| -against- : | |
| : | |
| GLENCORE INTERNATIONAL, A.G., : | |
| : | |
| Defendant. : | June 23, 2005 |
| : | |

**GLENCORE INTERNATIONAL, A.G.'S OPPOSITION TO
SABER PETROLEUM LTD.'S RESPONSE TO ORDER TO SHOW CAUSE**

**Preliminary Statement**

Defendant Glencore International, A.G. ("International") respectfully submits this opposition to Saber Petroleum Ltd.'s ("Saber") response to the Court's May 18, 2005 Order directing Saber to show cause why the Court should vacate its April 4, 2005 Order dismissing this case without prejudice.

Almost five years have passed since the Court stayed this case in favor of contractually-mandated arbitration. Yet in these intervening years, Saber has never filed a demand for arbitration. Saber offers no valid excuse for its failure to prosecute. There is no reason why this action should continue to linger, wholly dormant, on the Court's docket. The Court correctly dismissed the case without prejudice.

Saber's motion to vacate the Court's April 4, 2005 Order should be denied.

2382810v2

**Background**

Over five years ago, Saber (a Bermuda corporation) filed a complaint against International (a Swiss corporation) in this Court, dated February 17, 2000. Saber sued International for commissions allegedly due and owing under the terms of a contract Saber entered into with Glencore Ltd. ("Glencore") (a British corporation and subsidiary of International). The contract, which is governed by British law, provided that Glencore shall pay commissions to Saber based upon Glencore's purchases of oil products in Saudi Arabia. The contract contained an arbitration clause. In the complaint, Saber maintained that the scope of the contract extended beyond Glencore, and was intended to apply as well to purchases made by Glencore's parent, International. Saber sued to recover these contractual commissions based upon International's purchases of oil products in Saudi Arabia.

On April 21, 2000, International moved to stay the action in favor of contractually-mandated arbitration in London, England, pursuant to the Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. International expressly stated in its moving papers that it would submit to binding arbitration in London.

In opposition to the motion, Saber argued that because International was not a signatory to the contract – the same contract on which Saber based its claims in this action – that Saber was not bound by the arbitration clause. The Court disagreed. On November 3, 2000, the Court granted International's motion to stay ("November 3, 2000 Order"), holding that:

> At the heart of this international dispute is the intended scope of the contract, that is, whether it encompasses purchases by International, the parent corporation, or only the subsidiary, Glencore. The dispute therefore arises in connection with the contract and is subject to the contract's arbitration clause . . . .

> Saber is equitably stopped from repudiating the contract's arbitration clause.

(November 3, 2000 Order, p. 1)

On November 15, 2000, Saber moved for reconsideration of the November 3, 2000 Order or, in the alternative, for certification to the Second Circuit under 28 U.S.C. § 1292(b). On January 5, 2001, the Court issued an order granting Saber's motion for reconsideration but denying the relief sought, and denying certification to the Second Circuit.

Notwithstanding the denial of certification to the Second Circuit, on February 2, 2001, Saber filed a notice of appeal. International moved to dismiss the appeal on the ground that the November 3, 2000 Order staying the litigation in favor of contractually-mandated arbitration was not a final order, and consequently was not appealable. The Second Circuit agreed and, on June 20, 2001, granted International's motion to dismiss the appeal for lack of appellate jurisdiction.

Having exhausted whatever remedies Saber believed it had in the federal courts, and having failed to convince any court of the correctness of its position that it was not bound by the arbitration clause in the contract it had signed, Saber's only remaining step was to commence arbitration in accordance with the terms of the arbitration clause. However, Saber has not done so.

On April 4, 2005, four and a half years after the Court had stayed this action, and with Saber having failed to commence arbitration, the Court dismissed this case without prejudice.

Saber now seeks to have the dismissal order vacated. But Saber offers no legitimate basis for the relief it seeks. Nor does Saber justify its failure to initiate arbitration for

all these years. International should not be penalized for Saber's inertia. This case should remain dismissed in accordance with the Court's April 4, 2005 Order.

## Argument

Saber requests that the Court vacate its April 4, 2005 Order dismissing the case. Saber argues that this relief is appropriate because dismissal of the case would re-start the running of the statute of limitations. Saber takes the position that it cannot presently afford the cost of arbitration and therefore Saber would be unfairly prejudiced by the ordinary running of the statutory time clock. Saber also argues that because the Court never received its September 30, 2003 submission updating the Court on the status of the arbitration (*i.e.*, the lack thereof), the Court should vacate its order of dismissal.

Neither argument entitles Saber to relief.

### I. Saber's Purported Inability to Pay for Contractually-Mandated Arbitration Does Not Justify Reinstating This Dismissed Action

Saber argues that it is unfairly prejudiced by dismissal of the case because dismissal has re-started the running of the statute of limitations, and Saber says it cannot presently afford the cost of arbitration.[1] In effect, Saber wants this Court to "stop the clock" until Saber accumulates sufficient resources to pay for arbitration. There is no principle of law which recognizes such a request. In fact, Saber's motion cites no case law whatsoever.

Saber's position misconceives the purpose of statutes of limitations. "Statutes of limitations exist primarily for the protection of *defendants*." Eidshahen v. Pizza Hut of America, Inc., 973 F. Supp. 113, 116 (D. Conn. 1997) (emphasis added). There are two principal purposes behind statutes of limitations. The first "reflects a policy of law, as declared by the legislature,

---

[1] Whether the statute of limitations is tolled absent dismissal is not necessary to the Court's determination of this motion. Accordingly, International does not address this contention but respectfully reserves its rights as to that issue.

-4-

2382810v2

that after a given length of time a defendant should be sheltered from liability and furthers the public policy of allowing people, after the lapse of a *reasonable* time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability." Beede v. Town of East Haddam, 708 A.2d 231, 234 (Conn. App. Ct. 1998) (emphasis added). In its February 17, 2000 complaint, Saber sought compensatory damages of $3.9 million and punitive damages of $11.7 million (plus interest, costs, and attorneys fees). For almost five years, International has faced the threat of arbitration which has not materialized. Statutes of limitations exist precisely to protect defendants from such open-ended threats.

The second purpose behind statutes of limitations is to "avoid the difficulty in proof and record keeping which suits involving older claims impose." Id. It is fundamentally unfair to give Saber the unique privilege of an open schedule on when to proceed to arbitration, as memories may fade and potential witnesses may choose to leave International and may become unavailable to testify at an arbitration in London.

Saber argues that if the Court does not vacate its dismissal, Saber "will have no recourse but to lose a major portion of its claim for damages to the time bar." (Pl. Response to Order to Show Cause, p. 3) But Saber does have an option – to initiate an arbitration in accordance with the arbitration clause in the contract that Saber itself signed – an arms'-length transaction, between two sophisticated commercial entities.

Saber asserts that arbitrating this case in London is a "relative luxury" that it simply cannot afford. (Pl. Response to Order to Show Cause, p. 3) Saber hopes that it "will likely be in a position to commence the arbitration in London before the end of 2005." (Id.) Whether Saber presently has sufficient funds to pay for arbitration is irrelevant to the Court's determination, and International should not have to wait any longer.

Moreover, to grant Saber the relief it seeks would create an undesirable precedent. It would encourage signatories to arbitration clauses to inappropriately commence litigation as a device for stopping the statute of limitations clock until such time as they can raise sufficient funds to arbitrate. The federal courts should not be used in this manner.

In sum, Saber has failed to demonstrate legally-cognizable prejudice resulting from the Court's dismissal. To the contrary, International is entitled to the benefits of the statute of limitations. For four-and-a-half years, Saber has failed to commence arbitration. Saber has had an unusually generous amount of time to do so. Four-and-a-half years is an unreasonable amount of time to keep International suspended in this litigation while Saber has does nothing.[2] Saber is bound by the contract it signed. Saber's plea to this Court to allow it to circumvent the statute of limitations that governs everyone else is inappropriate and without basis in law or fact. Saber's motion should be denied.

## II.     The Court Properly Dismissed the Case for Failure to Prosecute

Saber argues that because the Court never received its September 30, 2003 status report submission – in which Saber reported only that "[a]rbitration has not yet commenced in the matter in London" – the Court should vacate its April 4, 2005 Order dismissing the case. This argument is not only irrelevant, but misinformed.

As the Court stated in its May 18, 2005 Order to Show Cause, the Court dismissed the case "on account of Saber's failure to prosecute," and not because the Court never received Saber's status report submission in 2003. In its May 18, 2005 Order, the Court noted that "almost one year and a half has passed since the planned commencement of the arbitration,

---

[2] Saber does not invoke principles of equitable tolling or equitable estoppel. Nor can it. There are no allegations of misconduct or bad faith by International to warrant the application of these principles. International has waited patiently for Saber to commence arbitration.

and over five years have passed since this matter was first filed." The Court was not, as Saber claims, penalizing Saber for non-receipt of its 2003 status report, which in any event, says nothing to alter the conclusion that Saber has done absolutely nothing in five years.

## CONCLUSION

Saber's motion to vacate the Court's April 4, 2005 Order should be denied.

Dated: Stamford, Connecticut
       June 23, 2005

        Respectfully submitted,

        DEFENDANT
        GLENCORE INTERNATIONAL, A.G.

By: _____
Peter E. Fleming, III (ct18986)
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
695 East Main Street
Stamford, CT 06901
Telephone: (203) 359-6200
Facsimile: (203) 328-2617
    and
N.Y. Attorneys for Defendant
Glencore International, A.G.

Eliot Lauer (ct15323)
Jacques Semmelman (ct15322)
Admitted Pro Hac Vice
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
(212) 696-6000

OF COUNSEL

    Eliot Lauer
    Jacques Semmelman
    Peter E. Fleming, III

2382810v2

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Opposition to Saber Petroleum Ltd.'s Response to Order to Show Cause was served by first class mail this 23rd day of June 2005, upon the following counsel of record:

TISDALE & LENNON, LLC
Charles E. Murphy, Esq.
10 Spruce Street
Southport, CT 06490

and

FOWLER, RODRIGUEZ & CHALOS
Michael G. Chalos, Esq.
366 Main Street
Port Washington, NY 11050

_____
Peter E. Fleming, III

2382810v2